UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



JOSHUA PATERNOSTER-COZART, #1401269

        Petitioner,

   v.                             Case No.: 2:13cv539

HAROLD W. CLARKE, Director,
Virginia Department of
Corrections,

        Respondent.


## OPINION and FINAL ORDER

By Order of October 5, 2011, a Hampton Circuit Court judge sentenced Joshua Paternoster-Cozart ("Petitioner") to serve four years of incarceration for several crimes. Petitioner filed a habeas corpus petition in the Hampton Circuit Court challenging such order, but failed to timely appeal the denial of that petition to the Virginia Supreme Court. Petitioner has now filed a habeas corpus petition in this Court. However, a state prisoner generally must exhaust all available state court remedies before a federal court can consider such a habeas corpus petition. Because Petitioner failed to timely appeal the denial of his state court habeas petition to the Virginia Supreme Court, he has procedurally defaulted his right to proceed with his federal habeas corpus petition. While federal law requires that federal habeas courts give due respect to

state courts' habeas decisions involving state prisoners, such procedural default can be excused where a petitioner shows "cause" for the default and actual "prejudice" as a result of a violation of federal law. As Petitioner fails to demonstrate that he is entitled to credit against his four-year sentence for time he previously spent in confinement during his diversionary drug court program, Petitioner has not shown that there was a violation of federal law, and therefore he has not shown "prejudice." For this reason, and as explained in greater detail below, his federal habeas petition is **DISMISSED and DENIED.**

The federal petition for a writ of habeas corpus pending before this Court was filed pursuant to 28 U.S.C. § 2254. Petitioner's primary contention is that he should be granted immediate release from incarceration because he is improperly being denied credits against his state court sentence in violation of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Additionally, Petitioner alleges that he was denied a hearing in violation of his due process rights under the Fourteenth Amendment, that he was forced to participate in a religious drug-counseling program in violation of his First Amendment rights, and that he was denied the right to the effective assistance of counsel, in violation of his Sixth Amendment rights.

2

Pursuant to the provisions of 28 U.S.C. § 636(b)(1), Rule 72(b) of the Federal Rules of Civil Procedure, and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia, this matter was previously referred by this Court to a United States Magistrate Judge for a report and recommendation ("R&R"). In addition to Petitioner's habeas motion, which was amended and supplemented with leave of court, the Magistrate Judge had before him a motion to dismiss filed by Harold W. Clarke, Director, Virginia Department of Corrections ("Respondent"). On May 22, 2014, the Magistrate Judge issued his R&R recommending that Respondent's motion to dismiss be denied, that Petitioner's amended habeas motion be granted, in part, and that Petitioner receive a credit against the sentence he is currently serving for sixty-six (66) days that he spent in jail confinement between July 14, 2010 and September 13, 2011. ECF No. 34.

By copy of the R&R, Petitioner and Respondent were advised of their right to file written objections to the findings and recommendations made by the Magistrate Judge. This Court thereafter received objections from both Petitioner and Respondent. Additionally, this Court requested and received materials that were not before the Magistrate Judge, but that were part of the state court record, including transcripts, to aid in the resolution of Petitioner's habeas motion. Having

3

considered <u>de novo</u> all objected-to portions of the R&R, for the reasons set forth in detail below, the Court **GRANTS** Respondent's motion to dismiss, and **DISMISSES** Petitioner's procedurally defaulted § 2254 motion in its entirety. Alternatively, Petitioner's habeas motion is **DENIED** on the merits.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court adopts and incorporates the Magistrate Judge's account of the facts, and repeats only the facts necessary to address the objections before this Court. On October 16, 2008, Petitioner pled guilty, pursuant to a plea agreement, to three counts of forgery, three counts of uttering, and one count of grand larceny in the Circuit Court for the City of Hampton, Virginia ("the trial court" or "Hampton Circuit Court"). Pursuant to the terms of the plea agreement, the trial court sentenced Petitioner to twelve years imprisonment, with all twelve years suspended, on the forgery and uttering counts, and to ten years imprisonment, with nine years and nine months suspended, on the grand larceny count, for a total of three months of active incarceration. Following incarceration, Petitioner was required to serve a lengthy period of probation. On January 8, 2010, Petitioner pled guilty to a new criminal offense, which occurred on December 20, 2008 — "shoplifting, third offense." The trial court found Petitioner guilty of such charge, entered an order reflecting that finding, and continued

4

the matter for preparation of a presentence report. Such new conviction constituted a violation of the terms of Petitioner's probation on the 2008 convictions.

While awaiting sentencing on the shoplifting conviction, and while awaiting a probation violation hearing on the 2008 convictions, Petitioner was evaluated for various alternative sentencing options. While these evaluations were taking place, Petitioner wrote his attorney in May 2010 asking to be screened for the Hampton Drug Court program. On July 13, 2010, the trial court accepted and signed two plea agreements between the Commonwealth and Petitioner; one pertained to the new shoplifting conviction, and the other resolved the probation violations on the 2008 forgery, uttering, and grand larceny convictions. Under the plea agreement for the 2008 probation violations, Petitioner and the Commonwealth agreed that the evidence was sufficient to revoke probation, but that if Petitioner successfully completed the Hampton Drug Court Program ("the drug court program"),[1] the Commonwealth would recommend a

---

[1] As explained by the Supreme Court of Virginia in Harris v. Commonwealth, 279 Va. 541, 544 (2010):

> In 2004, the General Assembly enacted the Drug Treatment Court Act, Code § 18.2-254.1, to enhance effective treatment programs for reducing drug use and its impact on families and drug-related crimes. As part of this program, the General Assembly designated "drug treatment courts" as "specialized court dockets within the existing structure of Virginia's court system offering judicial monitoring of intensive treatment and strict supervision of addicts in

suspended sentence on such probation violations, followed by an additional period of probation. However, if Petitioner failed to successfully complete the drug court program, he would be sentenced to a total of four years of active incarceration for the probation violations on the 2008 convictions. Under the plea agreement for the new shoplifting conviction, Petitioner's January 8, 2010 plea of guilty and the court's finding of guilt were recognized, and it was agreed by the parties that Petitioner would enter the drug court program. If Petitioner successfully completed the drug court program, the Commonwealth agreed to recommend a suspended sentence, followed by a period of probation. However, if Petitioner failed to successfully complete the drug court program, the parties agreed he would be sentenced to one year and eight months of active incarceration. The trial court signed both plea agreements and entered orders accepting the plea agreements.

---

drug and drug-related cases." Code § 18.2-254.1(D). The legislation provided that drug treatment court programs could be created by localities under the administrative implementation oversight of this Court, pursuant to standards created by a state drug treatment court advisory committee. Code § 18.2-254.1(E),(F). A local jurisdiction creating this program must also have an advisory committee that sets policies and procedures for the operation of the program. Code § 18.2-254.1(G),(H),(I). Potential participants are screened according to eligibility criteria established by the local program. No defendant is entitled to participate in the program and it is not available to every defendant. Code § 18.2-254.1(M). The Drug Treatment Court Act does not mandate specific procedures for the operation of the drug treatment court program.

Petitioner began the drug court program on July 14, 2010, and, according to his state habeas petition, he was "violated" on July 26, 2010, and again on September 10, 2010, for which he was required to serve jail time for three days and five days, respectively. On March 7, 2011, after being enrolled in the drug court program for almost eight months, Petitioner's third violation was based on a positive test for cocaine. Rather than terminating Petitioner from the drug court program, Petitioner was given the option, which he elected, to complete a program at the Stafford Diversion Center ("the diversion program").[2] ECF No. 49-4 at 6-8. While in the diversion program, on August 16, 2011, program staff members discovered synthetic marijuana on the Petitioner. As a result of his misconduct, Petitioner was administratively terminated from the diversion center. On September 13, 2011, Petitioner, who was in custody, appeared before the Hampton Circuit Court, with counsel, and the judge entered several written orders: (1) finding that Petitioner "failed to comply with the terms and conditions of the Drug Court Program"; and (2) setting an October 5, 2011 revocation hearing on Petitioner's 2008 convictions and a sentencing

---

[2] The state court record indicates that Petitioner appeared before the Hampton Circuit Court on March 15, 2011, with counsel, at which time the matter was continued while the Defendant was evaluated for placement in the Detention and Diversion Center Program.

hearing on Petitioner's shoplifting conviction.   ECF No. 46-1, at 18, 48; ECF No. 46-2, at 50.

On October 5, 2011, at the conclusion of the revocation/ sentencing hearing in Hampton Circuit Court, Petitioner was sentenced to a total of four years active incarceration based on his failure to complete the drug court program, as required by his July 13, 2010 plea agreements.   Such sentence represented a four year sentence on Petitioner's probation violations associated with his 2008 convictions.   No active time was imposed for Petitioner's 2010 shoplifting conviction.   During his term of incarceration, Petitioner inquired into the computation of his sentence and was informed that, per the Hampton Circuit Court, he would not receive credit against the four year sentence for the days that he was confined as part of the drug court program.   ECF No. 41-6.

On July 12, 2012, Petitioner filed a writ for a petition of habeas corpus in the trial court alleging various claims, including a claim that his constitutional rights were violated through the denial of a sentencing credit for the days he spent in confinement as part of the drug court program.   The trial court addressed each of Petitioner's habeas claims and "denied and dismissed" the state habeas petition by order dated November 2, 2012.   ECF. No. 25-1.   Petitioner thereafter timely pursued, and was granted, an extension until January 2, 2013, to file a

notice of appeal in the trial court. ECF No. 18-1 at 18. Petitioner asserts that he timely appealed on December 17, 2012, by mailing his appeal notice to the trial court.[3]   Id. at 19. However, the trial court never received such filing.

After seeking an update on his appeal status several months later, Petitioner received a letter from the Clerk of the Supreme Court of Virginia, dated April 8, 2013, indicating that the trial court never received Petitioner's notice of appeal. Petitioner thereafter resent his notice of appeal, dated December 17, 2012, to the Supreme Court of Virginia asking that it be treated as properly filed. However, on July 25, 2013, the Supreme Court of Virginia dismissed Petitioner's appeal for failure to comply with Virginia Supreme Court Rule 5:9(a), which requires that a notice of appeal be timely filed in the trial court. ECF No. 41-8.

On October 1, 2013, subsequent to the denial of Petitioner's state habeas appeal on procedural grounds, Petitioner filed his federal habeas petition in this Court. Petitioner thereafter filed an amended petition, ECF No. 9, and after being granted leave of court, Petitioner was permitted to file a "Supplemental Petition" which expands on the facts stated

---

[3] Petitioner supports his assertion that he timely appealed with an affidavit from a state prison official, which indicates that Petitioner sent "legal mail" on December 17, 2012, to the Hampton Commonwealth Attorney's Office, the Attorney General's Office, and the Hampton Circuit Court. ECF No. 18-1 at 20.

in the amended petition and includes exhibits and legal argument in support thereof. ECF No. 18. Petitioner's amended petition and supplement advance four grounds for relief.

On March 14, 2014, pursuant to an order issued by the Magistrate Judge, Respondent filed a "Rule 5 Answer," "Motion to Dismiss," and memorandum in support. ECF Nos. 23-25. Respondent's filings opposed the relief sought by Petitioner, and argued that this Court should not reach the merits of Petitioner's claims, but should instead dismiss his amended petition on procedural grounds.

On May 22, 2014, the Magistrate Judge assigned to this case issued his R&R recommending that: (1) Petitioner's claims should be considered on the merits even though they are procedurally defaulted because Petitioner demonstrates "cause" and "prejudice" to excuse his default on his first ground for relief; (2) as to such first ground, he should be credited with sixty-six (66) days that he spent in confinement between the date his drug court program began (July 14, 2010), and the date his drug court program was formally terminated by the trial court (September 13, 2011); and (3) Petitioner's remaining three grounds for relief should be dismissed on the merits because they do not demonstrate constitutional violations. ECF No. 34. On June 4, 2014, Petitioner filed a single objection to the R&R, arguing that, in addition to the sixty-six days recommended by

10

the Magistrate Judge, Petitioner should also receive credit against his four-year sentence for the approximately four months he spent confined at the Stafford Men's Diversion Center in mid-2011 as part of his drug court program.   ECF No. 38.   On June 11, 2014, Respondent filed four objections to the R&R and a response to Petitioner's objection.   Respondent's threshold objection argues that Petitioner failed to overcome his procedural default, and therefore, should be awarded no credit against his four-year sentence for any of the time he spent in jail, or a jail equivalent, during the drug court program.   ECF Nos. 40-41.   Petitioner thereafter filed a reply to Respondent's filing, ECF No. 44, and this matter is now ripe for review.

## II. STANDARD OF REVIEW

### A. R&R Standard

This Court conducts a de novo review of any portion of the Magistrate Judge's R&R to which specific objections are made. 28 U.S.C. § 636(b)(1)(C).   "The filing of objections to a magistrate [judge's] report enables the district judge to focus attention on those issues — factual and legal — that are at the heart of the parties' dispute."   Thomas v. Arn, 474 U.S. 140, 147 (1985).   "By contrast, in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the

recommendation.'" Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee note). This Court may "accept, reject, or modify" the Magistrate Judge's R&R, "in whole or in part," or may "recommit the matter" to the Magistrate Judge with instructions for further consideration. 28 U.S.C. § 636(b)(1)(C).

## B. § 2254 Standard

Federal habeas relief is available to a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Before a federal court may consider a writ of habeas corpus presented by an individual in state custody, the petitioner must first exhaust all available state court remedies. Longworth v. Ozmint, 377 F.3d 437, 447-48 (4th Cir. 2004) (citing 28 U.S.C. § 2254(b)). To satisfy the exhaustion requirement, the petitioner must generally "'give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,'" which includes "presenting to the state court 'both the operative facts and the controlling legal principles' associated with each claim." Id. at 448 (quoting Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000)).

12

"A state prisoner seeking § 2254 habeas corpus relief faces several procedural obstacles." Wolfe v. Johnson, 565 F.3d 140, 160 (4th Cir. 2009).  Failure to comply with applicable state procedural requirements can result in a "procedural default" which generally precludes a federal court from adjudicating the merits of a petitioner's claims.  Id. (citing Vinson v. True, 436 F.3d 412, 417 (4th Cir. 2006).  As explained in detail by the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"):

> Under the procedural default doctrine, federal habeas review of federal claims defaulted by prisoners in state court "pursuant to an independent and adequate state procedural rule . . . is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." Coleman v. Thompson, 501 U.S. 722, 750 (1991). "The procedural default doctrine and its attendant cause and prejudice standard are grounded in concerns of comity and federalism and apply alike whether the default in question occurred at trial, on appeal, or on state collateral attack." Edwards v. Carpenter, 529 U.S. 446, 451 (2000) (internal citation and quotation marks omitted).  In addition to showing "due regard for States' finality and comity interests," Dretke v. Haley, 541 U.S. 386, 393 (2004), the procedural default doctrine's cause and prejudice standard, by allowing federal courts to consider certain procedurally defaulted claims, also serves to ensure "that 'fundamental fairness [remains] the central concern of the writ of habeas corpus.'" Id. (quoting Strickland v. Washington, 466 U.S. 668, 697 (1984)). . . .

Richmond v. Polk, 375 F.3d 309, 322 (4th Cir. 2004).[4]

---

[4] There is also a limited actual innocence exception to the procedural default bar, Richmond, 375 F.3d at 323; however, such exception is not

### III. UNOBJECTED-TO PORTIONS OF THE R&R

The Magistrate Judge recommended that the latter three of Petitioner's four grounds for relief (denial of a hearing, forced participation in religious drug counseling, and ineffective assistance of counsel) should be denied because Petitioner failed to demonstrate a violation of his constitutional rights. Neither party objected to the Magistrate Judge's analysis concluding that such claims lack merit. Having conducted a "clear error" review of the Magistrate Judge's discussion and recommend findings, this Court finds no clear error in the conclusions reached by the Magistrate Judge, and therefore **ADOPTS** the recommendation that Petitioner's second, third, and fourth claims fail to demonstrate a constitutional violation.[5]   Because these three claims fail to establish a

_____

implicated in this matter.

[5] This Court would reach the same conclusion as the Magistrate Judge with respect to Petitioner's second ground for relief (alleged due process violation), as Petitioner fails to demonstrate that he was denied "notice to be heard" and/or denied a hearing in violation of the United States Constitution. Notably, even assuming that Petitioner has a constitutional right to "'some orderly process'" prior to being terminated from the drug court program, see Harris, 279 Va. at 545 (quoting Morrissey v. Brewer, 408 U.S. 471, 482 (1972)), Petitioner fails to demonstrate that he was in fact denied such "process" because the state court record demonstrates both that: (1) Petitioner had a hearing at the diversion center three days after the issuance of an infraction report alleging that Petitioner both possessed synthetic marijuana and used unauthorized communication devices, and at the conclusion of such hearing, Petitioner was found guilty of both infractions in violation of the rules of the diversion program, ECF No. 49-4, at 7-8; and, most importantly to this analysis, (2) more than three weeks later, Petitioner appeared before the

constitutional violation, they are insufficient to demonstrate "prejudice" to excuse Petitioner's procedural default, and Respondent's motion to dismiss grounds two, three, and four of the amended habeas petition is therefore **GRANTED** and such claims are **DISMISSED**. Alternatively, even if this Court assumes that it is permitted to reach the merits of such claims, grounds two, three, and four are **DENIED** on the merits for the same reasons stated by the Magistrate Judge, as supplemented above.

As a result of the above finding, the only remaining claim before this Court is ground one of Petitioner's amended petition, alleging that Petitioner's Fifth, Eighth, and Fourteenth Amendment rights were violated when Petitioner was not given credit for the time he spent in confinement as part of the drug court program.[6] The Magistrate Judge concluded that Petitioner's first claim was "exhausted," in that no further relief could be obtained through the state court habeas process, but also concluded that such claim was "procedurally defaulted" because it was dismissed by the Virginia Supreme Court pursuant

---

Hampton Circuit Court, <u>with counsel</u>, for a hearing, at which time he was terminated from the drug court program, ECF No. 41-4.

[6] This Court also conducts a Sixth Amendment analysis because although Petitioner did not squarely address his Sixth Amendment rights in his amended petition or supplement, the Magistrate Judge's detailed analysis of Petitioner's right to a sentencing credit included a discussion of the case law recognizing that the improper denial of sentencing credits can, in some circumstances, impinge upon Sixth Amendment protections.

to an adequate and independent state procedural rule. Neither party has objected to this preliminary procedural analysis, and this Court **ADOPTS** such analysis herein. The objected-to portions of the ground one analysis are set forth below, with the framework for such analysis informed by the objections pending before this Court.

## IV. RESPONDENT'S OBJECTIONS TO THE R&R

### A. Objection to Procedural Default Analysis

Respondent's first objection to the R&R challenges the Magistrate Judge's conclusion that Petitioner overcame his procedural default through demonstrating "cause" and "actual prejudice" with respect to ground one of the amended habeas petition. Richmond, 375 F.3d at 322. Although Respondent objects to the Magistrate Judge's conclusion that Petitioner demonstrated "cause and prejudice," Respondent "concedes that there may be sufficient evidence to support a finding of cause" in light of the evidence suggesting that Petitioner attempted to timely submit his state habeas appeal to the trial court. Resp't's Obj. Mem. 10, ECF No. 41 (emphasis added). After making such concession, Respondent's objection focuses entirely on Petitioner's purported failure to demonstrate prejudice. Id. This Court therefore does not construe Respondent's first objection as challenging the Magistrate Judge's "cause" analysis. As the Magistrate Judge's detailed analysis on

16

"cause" plainly does not evince any clear error, such analysis is **ADOPTED** and **INCORPORATED** herein.  This Court therefore finds that Petitioner satisfies the "cause" prong of the two-part procedural default test.

Turning to prejudice, although it is well-established that a procedurally defaulted claim cannot succeed absent a showing of "actual prejudice," the R&R notes that the precise contours of the prejudice inquiry are unclear.  R&R 13-14, ECF No. 34; see Amadeo v. Zant, 486 U.S. 214, 221 (1988) (explaining that although the Supreme Court had previously "adopted the 'cause and prejudice' requirement . . . for all petitioners seeking federal habeas relief on constitutional claims defaulted in state court," the Court left open "'for resolution in future decisions the precise definition of the 'cause'-and-'prejudice' standard'" (quoting Wainwright v. Sykes, 433 U.S. 72, 87 (1977))).  In the context of procedurally defaulted claims alleging trial errors, "prejudice" is defined as errors that "worked to [a petitioner's] actual and substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982).[7]

_____

[7] In the context of a § 2254 habeas claim asserting a "Brady violation," which occurs when the prosecution fails to disclose material exculpatory evidence to the defense, the Fourth Circuit has described the procedural default "prejudice" standard as "coincident with" the "prejudice" that must be proven to establish such a Brady violation, Wolfe v. Clarke, 691 F.3d 410, 420 (4th Cir. 2012), namely,

In the context of ineffective assistance of counsel, prejudice is defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984).

Whatever the precise contours of the prejudice inquiry as applied to alleged errors of a state tribunal or agency that are both unrelated to counsel's performance and unrelated to trial, the United States Supreme Court has expressly recognized that "[f]ederal habeas challenges to state convictions . . . entail greater finality problems and special comity concerns" than habeas claims advanced by a federal prisoner and require a showing "'greater than the showing required to establish plain error on direct appeal.'" Engle v. Isaac, 456 U.S. 107, 134-35 (1982) (quoting Henderson v. Kibbe, 431 U.S. 145, 154 (1977)). Here, this Court finds that Petitioner fails to demonstrate "actual prejudice" regardless of whether the Court applies the Frady "error of constitutional dimensions" test or the Strickland "result of the proceedings" test. Cf. Richmond, 375 F.3d at 326 n.7 (recognizing questions regarding the precise contours of the prejudice inquiry but finding that the court "need not resolve this question" because the petitioner did not

---

that the withheld evidence "is likely to have changed the verdict," United States v. Bartko, 728 F.3d 327, 338 (4th Cir. 2013) (internal quotation marks and citations omitted).

satisfy either version of the prejudice standard).   In order to effectively present the reasoning behind such conclusion, the Court finds that the best approach is to individually review each of the constitutional wrongs alleged by Petitioner.

### 1. Petitioner Fails to Demonstrate Prejudice from a Fourteenth Amendment Equal Protection Violation

Petitioner's first ground for relief alleges that he was denied equal protection under the law when he was denied a credit against his sentence for the days he spent in confinement during his drug court program.[8]   The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."   U.S. Const. amend. XIV, § 1.   "'[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination . . . .'"   Village of Willowbrook v. Olech, 528 U.S. 562, 564

---

[8] Pursuant to the analysis of the Supreme Court of Virginia in Charles v. Commonwealth, 270 Va. 14, 20 (2005), abrogated on other grounds by Rawls v. Commonwealth, 278 Va. 213 (2009), this Court's discussion assumes that, as argued by Petitioner, the days Petitioner spent in the Stafford Diversion Center are the equivalent of "incarceration." This Court makes such assumption notwithstanding the fact that Petitioner served this time while under drug court supervision, and the fact that Charles was analyzing a defendant's time spent in a "Detention Center Incarceration Program," see Va. Code § 53.1-67.8, whereas here, it at least appears that Petitioner was assigned to a "Diversion Center Incarceration Program," see Va. Code. § 53.1-67.7.

(2000) (quoting <u>Sioux City Bridge Co. v. Dakota Cnty, Neb.</u>, 260 U.S. 441, 445 (1923)).

"'[T]o succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.'" <u>Williams v. Hansen</u>, 326 F.3d 569, 576 (4th Cir. 2003) (quoting <u>Morrison v. Garraghty</u>, 239 F.3d 648, 654 (4th Cir. 2001)). If such a showing is made, the court "'proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.'" <u>Id.</u> (quoting <u>Morrison</u>, 239 F.3d at 654). Heightened scrutiny applies in cases involving discrimination based on membership in a suspect class, to include race, national origin, and sex, as well as in cases where the challenged activity "impinges upon a fundamental right." <u>United States v. Lawson</u>, 677 F.3d 629, 637 (4th Cir. 2012). Otherwise, the appropriate level of scrutiny is "rational basis" review, and a law or policy satisfies such standard if it is rationally related to a legitimate government purpose. <u>Romer v. Evans</u>, 517 U.S. 620, 631 (1996); <u>see</u> <u>Giarratano v. Johnson</u>, 521 F.3d 298, 303 (4th Cir. 2008) ("[T]he challenged classification need only be rationally related to a legitimate state interest unless it violates a fundamental right or is drawn upon a suspect classification such

as race, religion, or gender." (citing <u>City of New Orleans v. Dukes</u>, 427 U.S. 297, 303 (1976))).

Relevant in this case to the equal protection analysis is the Virginia statute providing that "[a]ny person who is sentenced to a term of confinement in a correctional facility shall have deducted from any such term all time actually spent by the person . . . in a state or local correctional facility <u>awaiting trial or pending an appeal</u> . . . ." Va. Code § 53.1-187 (2014) (emphasis added). Under Virginia law, confinement commences and is computed "from the date of the final judgment, which, in case of an appeal, shall be that of the refusal of a writ of error or the affirmance of the judgment." Va. Code § 53.1-186. Also relevant is the fact that Petitioner's state court record demonstrates that both officials within the Virginia Department of Corrections ("VDOC") and the Hampton Circuit Court concluded that Petitioner was not to be awarded any credit against his four-year sentence for the time he spent in drug court confinement.

### a. Disparate Treatment Based on Indigency or Pursuit of Appeal Rights

In asserting that he was denied equal protection under the law, Petitioner relies on the Fourth Circuit's opinion in <u>Durkin v. Davis</u>, 538 F.2d 1037 (4th Cir. 1976). Pet'r's § 2254 Supp. 4, ECF No. 18. In <u>Durkin</u>, the Fourth Circuit acknowledged that

21

prior case law "recognized that the right to credit for jail time awaiting trial on a bailable offense and pending appeal is not a matter of legislative grace but is a right constitutionally mandated, available to state prisoners as well as federal prisoners." Id. at 1039-40 (emphasis added). Explaining the justification for such rule later in its opinion, the Fourth Circuit noted that "[t]he equal protection violation is founded on the inequality of treatment between one unable to make bail and one who can make bail, in the case of pre-sentence time, as well as the inequality resulting between the defendant who appeals and the defendant who does not, in the case of credit for confinement pending appeal." Id. at 1040-41. Although it was "irrelevant" in Durkin, the Fourth Circuit acknowledged precedent supporting the principle that failure to award a credit for pre-trial confinement on a bailable offense does not always constitute an equal protection violation because the sentencing judge may have "given credit in his sentence" for time spent in pre-trial confinement. Id. at 1040.

The fact pattern before this Court is markedly different from the scenario discussed in Durkin where a defendant is unable to make bond when he is arrested, and therefore, spends a lengthy period of time in jail awaiting trial and/or pending an appeal. Id. at 1039-40. Notably, the instant matter does not involve the denial of jail credit that is in any way related to

22

Petitioner's inability to post bail, or Petitioner's right to pursue an appeal. Rather, Petitioner seeks credit for days he spent in confinement during his attempt to complete a rehabilitative program that was an alternative to an active sentence of confinement in the penitentiary. His drug court program was not a part of any active sentence, nor does it represent time spent "awaiting" a determination of guilt, a sentence, or the resolution of an appeal. As demonstrated by the record in this case, Petitioner not only voluntarily entered the drug court program, and later voluntarily entered the diversion program, but he wrote a letter requesting that he be "screened for drug court" so that he could both tackle his drug problem and "have [his] freedom." ECF No. 18-1, at 31. Pursuant to Petitioner's plea agreements, successful completion of the drug court program would have likely resulted in a suspended sentence, and unsuccessful completion called for a sentence of five years and eight months incarceration.

Although Petitioner was confined during portions of his drug court program, each day of confinement was triggered by his misbehavior, in one form or another, and had nothing to do with his financial status, or his right to pursue an appeal. Petitioner was therefore not "awaiting trial" or "pending an appeal" during the days he was confined as part of the drug court program. The equal protection analysis that is discussed

23

in _Durkin_ and the cases cited therein, which involved disparate treatment due to indigency, and protection of appellate rights, is simply not implicated here. Therefore, _Durkin_ fails to support Petitioner's claim that his equal protection rights were violated.

### b. Disparate Treatment from Those Similarly Situated

Although Petitioner fails to demonstrate an equal protection violation through reliance on _Durkin_, he also argues that his equal protection rights were violated because other Virginia inmates that were "similarly situated" received credit against their sentences for days they spent in confinement during their drug court programs. As previously noted, to succeed on his equal protection claim, Petitioner would first need to prove that he was intentionally treated differently from other similarly situated individuals. _Village of Willowbrook_, 528 U.S. at 564. "Generally, in determining whether persons are similarly situated for equal protection purposes, a court must examine all relevant factors." _United States v. Olvis_, 97 F.3d 739, 744 (4th Cir. 1996).

Petitioner has not adequately demonstrated that he was intentionally treated differently from others similarly situated. First, although Petitioner provided this Court with three documents that allegedly demonstrate that other inmates received credit for time they spent in confinement as part of

their drug court programs, none of these documents demonstrate that such individuals even participated in a drug court program.[9] Second, even assuming that the three identified inmates were drug court participants as claimed by Petitioner, Petitioner fails to demonstrate that the VDOC or Hampton Circuit Court intentionally treated them differently. Third, even if these individuals were intentionally treated differently, Petitioner fails to demonstrate that they were similarly situated to Petitioner in that: (1) they entered into a plea agreement in which drug court was an alternative to a specified sentence in the penitentiary; (2) based on their performance during the drug court program, to include conduct that appears to constitute new

---

[9] The first document is the VDOC "Legal Update" sheet for a Mr. Thomas Seidnitzer. Other than handwritten notes on such computer generated sheet, which may be Petitioner's writing, nothing therein suggests that Mr. Seidnitzer participated in a drug court program. ECF No. 18-1, Ex. C. The second document is a VDOC "Legal Update" sheet for a Mr. Jacob Wright which indicates that Mr. Wright received sentencing credit for time spent in a diversion center, but fails to indicate that he was in a drug court program. ECF No. 38, Encl. 1. The exhibit associated with Mr. Wright also does not indicate whether he was sentenced to serve time in the diversion center program as contrasted with voluntarily opting for diversion center placement as part of a drug court program. The third document is the VDOC "Legal Update" sheet from a Mr. George Freeland and similarly fails to indicate that he was a drug court participant. ECF No. 38, Encl. 2. Although such exhibit does indicate that Mr. Freeland received credit against a sentence for time spent in the Stafford Diversion Center, it appears that Mr. Freeland was continuously incarcerated in various jail facilities and detention centers from April 11, 2007, until October 20, 2008 when he entered the Stafford Diversion Center. Accordingly, the face of such exhibit suggests that Mr. Freeland was not sent to the diversion center under the same circumstances as Petitioner.

25

criminal acts,[10] they spent time in confinement as part of their drug court program; (3) that such individuals were sentenced after the unsuccessful completion of their drug court programs; (4) that the sentencing judge imposed a sentence substantially less than that called for by their written plea agreements; and (5) that the total time spent in confinement, including all drug court confinement, aggregates to less than the active term of incarceration called for by the written plea agreements. Accordingly, Petitioner fails to demonstrate intentionally disparate treatment from those similarly situated, and therefore fails to demonstrate an equal protection violation.

### c. Justification for Treating Drug Court Participants Differently from Other Felons

In addition to Petitioner's citation to Durkin and reference to three other inmates, Petitioner's equal protection claim, and Respondent's objection to R&R's equal protection analysis, implicates the question of whether an individual confined in a Virginia detention center as part of a drug court program is "similarly situated" to an individual confined in a Virginia detention center pursuant to a final sentencing order. The difference in classification between such individuals (drug

---

[10] According to the Probation Officer's report submitted by Petitioner, Petitioner was "afforded the opportunity to complete the Stafford Diversion Center program in lieu of termination from the Drug Court program" after he used illegal drugs while participating in the drug court program. Pet'r's Objections, ECF No. 38 at Encl. 4.

court participant vs. non-participant) appears to require only rational basis review as Petitioner has failed to demonstrate that such classification impacts a suspect class, nor has he proven the existence of a "fundamental right" to jail credit for time spent in jail or diversion center confinement as part of a pre-sentencing drug court rehabilitative program. Cf. Giarratano, 521 F.3d at 302-03 (applying rational basis review to a Virginia statute precluding prisoners from making requests under the Virginia Freedom of Information Act and noting that "prisoners" are not a suspect class); Reno v. Koray, 515 U.S. 50, 64-65 (1995) (concluding that, pursuant to federal statute, an individual that has been "released" on bail but has had his freedom restricted through placement in a community treatment center is "not entitled to a credit against his sentence of imprisonment" for time spent in such center, whereas a person "detained" and committed to the Bureau of Prison's custody that is confined by the BOP during such period of detention at a community treatment center earns a sentencing credit).[11]

---

[11] Although Koray is a statutory interpretation case and not a case focusing on the constitutionality of the federal sentencing system, the Supreme Court's conclusion that the federal statute governing sentencing credits makes a distinction based on a person's status ("released on bail" vs. "detained"), rather than the nature of the restrictions imposed on such person's liberty by the unique rules of a specific detention center or community center, appears to support the proposition that the United States Constitution does not require that every day spent under restrictive conditions must be credited against a criminal sentence. Cf. Randall v. Whelan, 938 F.2d 522, 525 (4th

Although there appears to be limited case law addressing sentencing credits in the context of drug court alternative sentencing programs, a case from the Georgia Court of Appeals provides a detailed (and exceedingly rational) explanation as to why a state authority would not grant credit for time spent in confinement during a drug court program that is imposed as an alternative to active incarceration in a penitentiary. Stinson v. State, 630 S.E.2d 553 (Ga. Ct. App. 2006). In Stinson, a probationer that failed to complete a drug court program was subsequently sentenced to twenty to twenty-four months in a detention center "with credit for time served beginning that day." Id. at 555. On appeal, the defendant contended that the trial court erred by failing to award him "credit for the time he spent in a Drug Court rehabilitation program," which included both jail custody and time spent in three halfway houses. Id. at 554-55. In affirming the trial court's ruling, the appellate court concluded that "[o]n this issue of first impression, we hold that a defendant who elects to plead guilty and undergo alternative treatment in a Drug Court program offered under OCGA § 16-13-2(a) is not entitled to credit for

---

Cir. 1991) (noting that the defendant's contention "that the 'degree of restraint' to which he was subjected at his residential center was sufficient to constitute 'custody' . . . reveals a misunderstanding of the relevant terms," and that "[t]here exists a strong presumption that 'custody' refers to the legal authority of the custodian rather than to actual housing conditions").

time spent in treatment if he is subsequently terminated from
the program and sentenced on his original crime." Id. at 554.
Explaining the rejection of the defendant's claims on appeal,
the Court stated:

> [The defendant] was given the option at the beginning:
> (1) he could suspend his criminal case, choose to sign
> a Drug Court contract, and enter a rehabilitation
> program, or (2) he could be sentenced and begin
> serving his time. The trial court advised him that if
> he did not successfully complete the program, he would
> be subject to two years in a probation detention
> center followed by three years on probation. He
> signed the Drug Court contract and initialed the term
> providing that if he were terminated from the program,
> he would be sentenced "within the discretion of the
> court." According to the trial court, [the defendant]
> said numerous times that he wanted to remain in the
> program as opposed to being put in the system earlier.
> For us to hold that his sentence began running when he
> entered the program would constitute a "complete abuse
> of the rehabilitative alternative of participation in
> the Drug Court Program." If time spent in Drug Court
> rehabilitation equals time spent serving a sentence,
> the choice between Drug Court and traditional
> sentencing is meaningless. Therefore, we conclude
> that the trial court did not err . . . .

Id. at 556-57.

For the same legitimate reasons that Georgia appears to
have implemented a drug court program whereby a participant does
not earn "credits" against a subsequently imposed sentence, the
Hampton Drug Court's practice of denying credit to individuals
for time spent in drug court confinement, be it in a jail, a
detention center, or a halfway house/community center, survives
rational basis review. Notably, if an individual received

credit for jail sanctions or restrictive housing arrangements that were imposed as part of a rehabilitative drug court program the incentive to complete such programs may not be as high because individuals could essentially "bank" credits to apply to their subsequently imposed punishments. Moreover, an incentive might be created for individuals guilty of crimes to pursue drug court placement without any intention of taking the program seriously or complying with the law because any days spent in drug court confinement, including days spent in a diversion center, which is less restrictive than a penitentiary, would ultimately serve to reduce any subsequently imposed punishment for the original crime. Accordingly, the rehabilitative purpose of a drug court program, as well as its implementation in a manner that requires a defendant to voluntarily enter such program as an alternative to incarceration, with the continuing threat of long-term incarceration acting as the proverbial "stick" to motivate the drug court participant, provide the rational basis for treating drug court participant's differently from those sentenced to jail or sentenced to serve time in a detention or diversion center.

### d. Unique Facts before the Court

Even if this Court believed that a state policy denying sentencing credit for drug court participants may violate the equal protection clause in some circumstances, and/or if this

Court had concerns as to the consistency with which the VDOC or the Hampton Courts applied such policy, the Court would still conclude that Petitioner fails to demonstrate an equal protection violation based on the unique facts of this case.

When addressing equal protection claims associated with the denial of credits for time spent in pre-trial confinement, some federal courts have historically applied "a 'conclusive presumption' that the sentencing judge had given credit in his sentence to such jail time" whenever the "sentence, when increased by the pre-sentence confinement time, does not exceed the maximum sentence for the offense of which the prisoner has been convicted." Durkin, 538 F.2d at 1040; see Stapf v. United States, 367 F.2d 326, 329-30 (D.C. Cir. 1966). Although such presumption was labeled "irrelevant" in Durkin, the Durkin opinion noted in a footnote that such presumption had been "rejected" by the Fourth Circuit in Padgett v. United States, 387 F.2d 649 (4th Cir. 1967), "with the effect being 'to leave the matter open to be determined according to the facts in the particular case.'" Durkin, 538 F.2d at 1040 n.7 (quoting Padgett, 387 F.2d at 649)). [12] Accordingly, the resulting rule

---

[12] At least with respect to the sentencing of defendants in federal court, the majority of the cases discussing such presumption arose in the 1960s because in 1966 Congress passed the Bail Reform Act which statutorily modified the process for calculating sentences served by federal inmates. "Section 4 of the [1966] Act . . . provides automatic administrative credit to all [federal] defendants sentenced

asks a court to consider, based on the unique facts of a particular case, whether the sentencing judge took into consideration when fashioning a sentence the uncredited confinement that occurred prior to sentencing. Id.; Miska v. Bartley, No. 5:09cv92, 2010 WL 5019349, at *3 (W.D. Va. Nov. 23, 2010).

Here, the plea agreements that Petitioner signed on July 13, 2010, expressly state that he was to receive a four year active term of incarceration for his probation revocations and a one year and eight month active term of incarceration for his more recent shoplifting conviction. The ever-present risk of having such sentence imposed upon failure to complete the

---

after its effective date. This provision is 'the Attorney General shall give any such person credit towards service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed.'" Bryans v. Blackwell, 387 F.2d 764, 766 (5th Cir. 1967) (quoting Public Law No. 89-465, 89th Cong. 2d Sess., Section 4, June 22, 1966, 80 Stat. 214); see also Stapf, 367 F.2d at 329 ("The 1966 act . . . assures credit for all [federal prisoners in] presentence custody, and not merely custody for want of bail."). Subsequent to the passage of the 1966 Bail Reform Act, the presumption discussed in Durkin, and rejected by the Fourth Circuit in Padgett, has still been applied when conducting a constitutional analysis of a state court sentence where credit was not given for pre-trial custody. See, e.g., Faye v. Gray, 541 F.2d 665, 668 (7th Cir. 1976) (conducing Fifth and Fourteenth Amendment analysis and concluding, in a fractured decision, that the defendant rebutted the "Stapf presumption" to the extent it applied); Miska v. Bartley, 2010 WL 5019349, at *3 (W.D. Va. Nov. 23, 2010) (discussing the constitutional rights recognized in Durkin, and the Fourth Circuit's rejection of the "presumption" in Padgett, and concluding that a sentence imposed by a Virginia judge in violation of the Virginia statute requiring credit for pretrial confinement on facts that clearly demonstrated that the sentence, which was fixed by the jury, did not reflect a "credit" for pre-trial detention, "burdened" the defendant's "constitutional rights under the Fifth, Sixth, and Fourteenth Amendments").

alternative drug court program served to encourage Petitioner to take rehabilitation seriously, to take drug court seriously, and later, to take the diversion center program seriously. The plea agreements were not ambiguous with respect to the outcome if Petitioner failed to complete the drug court program. Rather, Petitioner's consolidated plea agreement covering all of his probation violations clearly states: "[I]f the defendant does not successfully complete the Drug Court program, the defendant will have two (2) of his (2) year sentences . . . revoked and be sentenced to four (4) years on the original conditions . . . ." Hampton Cir. Ct. Habeas Case File, Case No. CL12-1905 at 64-65 (emphasis added). Similarly, Petitioner's separate plea agreement for his shoplifting conviction clearly states "if the defendant does not successfully complete the Drug Court Program, the defendant will be sentenced to five (5) years in the State Penitentiary, with execution of three (3) years four (4) months suspended for 5 years (1 year 8 months to serve)." Id. at 61 (emphasis added). Therefore, prior to entering the drug court program, Petitioner knew if he failed to complete the program he would be sentenced to five years and eight months imprisonment. After failing to complete the drug court program, on October 5, 2011, the Hampton Circuit Court sentenced Petitioner to only four years of active incarceration, and suspended all of the sentence for the shoplifting offense rather than imposing the

one year and eight month sentence as stated in the plea agreement.  Id. at 93-98.

Prior to issuing its sentence, the trial court heard extensive testimony from Petitioner's probation officer, Petitioner's mother, Petitioner's friend, and from Petitioner himself.  ECF No. 49-4.  The testimony described the Petitioner's personal hardships and his involvement in the drug court program and the diversion center program.  The sentencing judge therefore heard the background of the case, including information about the length of time that Petitioner was at the Stafford Diversion Center.  Id. at 18.  The parties also acknowledged and discussed the two plea agreements that called for a total of five years and eight months of active incarceration.  Id. at 4, 18-19, 47-51.  Petitioner's counsel specifically asked the court for leniency and to impose a sentence less than the five years and eight months contemplated by the written plea agreements.  At the conclusion of such hearing, the court found "the defendant had violated the conditions of drug court and the plea agreement that placed him into drug court."  Id.  The judge specifically stated that he was giving the Petitioner "four years to serve[, and] note[d] that there is on the shoplifting charge a year and eight months that the plea agreement calls for him to serve, but I have suspended that on the remaining portion."  Id. at 52-53.

34

Based on these unique facts, it is clear to this Court that an equal protection claim does not lie in this case because the trial court's ultimate sentence took into account the time Petitioner already spent incarcerated as part of the drug court program. Although Petitioner was clearly sentenced below the statutory maximum for his crimes, more important to this Court's determination of whether the sentencing judge took into account Petitioner's uncredited drug court confinement is the fact that Petitioner was sentenced to substantially less imprisonment than expressly called for by his written plea agreements. The sentencing transcript reveals that the sentencing judge was aware of the nearly four months that Petitioner spent in the diversion center, and knowing such mitigating fact, among others, Petitioner received a sentence requiring him to serve substantially less time in jail than he would have received if the judge imposed a five year and eight month sentence but gave Petitioner credit for all of the time he spent in drug court confinement. Accordingly, even if a different defendant on different facts may have a valid equal protection claim based on the denial of credit spent in confinement as part of the Virginia drug court program, the facts of this case demonstrate that no constitutional violation occurred with respect to this Petitioner.[13]

---

[13] It appears that Petitioner's strongest argument for a sentencing

This Court's conclusion that Petitioner fails to demonstrate an equal protection violation is not shaken by Petitioner's citation to <u>Charles v. Commonwealth</u>, 270 Va. 14, 20 (2005), <u>abrogated on other grounds by</u> <u>Rawls v. Commonwealth</u>, 278 Va. 213 (2009). In <u>Charles</u>, the defendant was initially sentenced to five years imprisonment with four years suspended (i.e., one year active time). <u>Id.</u> at 16. After the defendant served his active sentence, he was placed on probation. <u>Id.</u> at 17. The defendant thereafter violated the conditions of his probation, and the trial court revoked the suspended sentence, resuspended the sentence, and placed the defendant back on

---

credit pertains to the time he spent in jail between the date he was expelled from the detention center program and/or administratively terminated from the drug court program (Aug. 19, 2011), and the date that he was formally terminated from the drug court program by the judge (Sept. 13, 2011). However, because the state court records suggest that Petitioner was still a drug court participant during this time, <u>see, e.g.</u>, ECF No. 41-6, ¶ 8, it appears that the state court had authority to consider such period part of the drug court program. <u>Cf.</u> <u>Harris</u>, 279 Va. at 545-46 (indicating that the defendant had "a [conditional] liberty interest while he was participating in the drug treatment court program as part of the plea agreement accepted by the trial court" and that such conditional liberty interest "could be revoked <u>only by order of the circuit court</u>") (emphasis added). Moreover, because Petitioner received such a substantially reduced sentence that was more than a year and a half less than the time called for by his written plea agreements, on these facts, Petitioner fails to demonstrate a constitutional violation based on the manner in which his reduced sentence was calculated. <u>Cf.</u> <u>Goode v. Commonwealth</u>, No. 459-06-2, 2007 WL 895684, at *2 (Va. Ct. App. Mar. 27, 2007) (finding that the defendant failed to demonstrate "a miscarriage of justice" based on the lack of a sentence credit for time that he allegedly spent in a detention/diversion center in part because the defendant's "actual incarceration time," even including any time that he "spent in the [detention/diversion] program," was less than his original sentence). Absent a constitutional violation, this Court lacks authority to otherwise second guess the state court's procedure for terminating a drug court participant from the drug court program.

probation <u>with the condition</u> that he enter and complete a detention center incarceration program. <u>Id</u>. After the defendant completed a five-month detention center program, he violated other terms of his probation. <u>Id</u>. The trial court again revoked the defendant's probation, and imposed a sentence of four years active incarceration. <u>Id</u>. Petitioner did not receive credit against that four-year sentence for the five months he previously spent in the detention center program. <u>Id</u>. Upon defendant's challenge to his sentence, the Virginia Court of Appeals concluded that the trial judge had sufficient discretion to determine whether defendant should receive credit for the time spent in the detention center. <u>Id</u>. However, the Virginia Supreme Court reversed such holding, finding that the time the defendant spent in the detention center was the equivalent of incarceration, and "by sentencing [the defendant] to four years imprisonment, the trial court added five months incarceration to [the defendant's] original five-year sentence." <u>Id</u>. at 18-19. The Court concluded that absent clear statutory authority to do so, the trial judge lacked discretion to extend imprisonment <u>beyond the originally imposed five year sentence</u>. <u>Id</u>. at 19. Stated differently, because the defendant's original final sentence was five years imprisonment, the maximum aggregate time he could be required to serve in confinement was five years.

In contrast to Charles, here, Petitioner's term of active incarceration, even including all the time he spent in confinement during the drug court program, does not come close to approaching his original final sentence.[14]  As of the date of the instant opinion, Petitioner has been sentenced to a total of four years and three months active incarceration on these charges, and all of his drug court confinement amounts to less than seven months.  Under any calculation, Petitioner has therefore served less than five years of the twenty-two years originally imposed on his 2008 convictions, and he has served no active time of the five years imposed on his 2010 shoplifting conviction.  Accordingly, unlike the sentencing court's abuse of discretion in Charles, the manner in which Petitioner's sentence was imposed and calculated appears to be within the trial court's authority and discretion.  See Goode v. Commonwealth, No. 459-06-2, 2007 WL 895684, at *2 (Va. Ct. App. Mar. 27, 2007) (finding that the defendant failed to demonstrate that a "miscarriage of justice" occurred when he was not given credit

---

[14] Petitioner's filings in this Court erroneously conclude that the "statutory maximum" sentence in this case "is four years as that was the original sentence imposed in 2008." Pet'r's § 2254 Supp. 5, ECF No. 18.  In reality, Petitioner was sentenced to a total of twenty-two years in 2008 (two years each on six different counts of conviction and ten years on a seventh count).  Accordingly, when Petitioner's probation on these seven 2008 convictions was revoked in 2010, Petitioner, having previously been sentenced to only three months active time, was actually facing a statutory maximum of up to twenty-one years and nine months incarceration, plus whatever time he received on the more recent shoplifting conviction.

against his active sentence for time allegedly spent in a diversion and detention center program because, even accounting for the time spent in such program, the total period of incarceration was less than the sentence originally imposed).

Moreover, focusing on Petitioner's current sentence of four years, even if such sentence is viewed, as argued by Petitioner, to be an effective sentence of four years and seven months due to his drug court confinement, such sentence still does not exceed the five year and eight month term of incarceration that Petitioner expressly agreed to serve in the written plea agreements that he, his attorney, the attorney for the Commonwealth, and the Hampton Circuit Court Judge all signed immediately before Petitioner entered the drug court program. If the trial judge had the authority to sentence Petitioner to a term of imprisonment that, even after credit for drug court confinement, would have required him to serve more than five additional years in the state penitentiary (five years and eight months minus seven months of claimed drug court confinement), the judge surely did not offend the United States Constitution by sentencing Petitioner to a lesser overall sentence of four years additional incarceration.[15]   Furthermore, even if the

---

[15] As noted above, the Charles case involved an initial probation revocation whereby the defendant was placed back on "probation" with the condition that he complete a five month detention center program. After completing such program, the defendant had just spent five

sentence, as imposed and implemented, is somehow procedurally improper under Virginia law, because Virginia law clearly permitted a sentence of up to at least five years and eight months, any procedural error is a matter of state law and is therefore not cognizable on federal habeas review. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). The unique facts of this case therefore do not support an equal protection violation.

---

months in conditions equating to jail "confinement," yet such five months was not "credited" against any active sentence as there was no active sentence to be satisfied at that time. Although the Supreme Court of Virginia concluded that the five months of "confinement" could not be ignored when the sentencing court later imposed a new active sentence that brought the total active sentence to the maximum that was allowable in that case, nothing in the court's opinion indicated that a period of time spent in a detention center must always be applied against some active sentence. Notably, had the defendant in Charles followed all rules of probation after he was released from the detention center he would have served five months of confinement that he never received a "credit" for against any active sentence. Such result, however, does not appear to offend Virginia law or the United States Constitution. Similarly, there is not an apparent constitutional violation when days spent in jail, or a jail equivalent, that are part of a rehabilitative drug court program are not "credited" against a later sentence when the later sentence is not only far below the statutory maximum, but below the stipulated sentence set forth in a defendant's plea agreement. Cf. Goode, 2007 WL 895684, at *2. This is so because a day spent in jail is not rendered unconstitutional merely because it is never ultimately applied as a credit to an active sentence. For example, an individual who is acquitted after a trial may have been confined pre-trial, yet because no sentence is ultimately imposed, no "credit" is ultimately received. Likewise, detention in jail on charges that are later dismissed is not "credited" against any active sentence, yet it remains constitutional. Wallace v. Jarvis, 726 F. Supp. 2d 642, 647 (W.D. Va. 2010). While Charles indicates that a day spent in a Virginia detention center is the equivalent of day spent in a jail, and that the days spent in jail on a given conviction may not accumulate to a period of time greater than the maximum original sentence, such proposition does not establish a constitutional violation when prior diversionary confinement days remain "unapplied" to an active sentence yet decades of the originally imposed sentence remain suspended.

40

For the reasons set forth above, Petitioner fails to overcome the procedural default of his Fourteenth Amendment Equal Protection claim. Alternatively, he fails to demonstrate that such claim is meritorious.

### 2. Petitioner Fails to Demonstrate Prejudice Resulting from a Fourteenth Amendment Due Process Violation

In addition to asserting a Fourteenth Amendment equal protection claim, Petitioner's first ground for relief briefly references the due process clause of the Fourteenth Amendment. However, the only fact or argument Petitioner appears to advance in support of such claim is that Petitioner's sentencing orders both call for a credit for "time spent in confinement while awaiting trial," but the VDOC is purportedly relying on a subsequent and conflicting "instruction" by the Hampton Circuit Court that Petitioner receive no credit for the days he spent in confinement as part of the drug court program.

Petitioner's limited facts and argument implicating his due process rights fail to demonstrate a constitutional violation, or even a violation of Virginia law, as Petitioner's cursory argument overlooks the distinction between time spent in confinement while "awaiting trial or appeal" and time spent in drug court confinement that is entirely separate and apart from the trial process. Time spent in confinement as part of the diversionary rehabilitative drug court program is confinement

41

that resulted from: (1) Petitioner's request to join the drug court program in order to allow him the opportunity to avoid the imposition of a lengthy prison sentence; and (2) Petitioner's failure to abide by drug court rules. Nowhere in Virginia Code § 53.1-187 does it state that a defendant must be awarded a credit against a later sentence for time spent in drug court confinement stemming from such individual's failure to abide by drug court rules, which in the instant matter, on at least two occasions, appears to be based on the commission of additional criminal acts. Cf. Estelle, 502 U.S. at 67-68 (reemphasizing the well-established proposition that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions" as a "federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States"). Rather, the statute states that regardless of the instructions of a court, a defendant is to receive credit for time spent in confinement while "awaiting trial or pending an appeal." Va. Code § 53.1-187.

Accordingly, here, there does not appear to be any conflict between the sentencing court's instructions that Petitioner receive credit for time spent in confinement awaiting trial,[16]

---

[16] It is undisputed that Petitioner received "credit" for the days he was confined before his drug court program began, and for those days he spent "awaiting sentencing" after he was formally terminated from the drug court program on September 13, 2011.

and the Hampton Circuit Court's/VDOC's apparent practice,[17] or at a minimum, decision in this case, not to award credit for confinement that was part of Petitioner's diversionary drug court program. As above, the constitutional concerns discussed by the Fourth Circuit in Durkin are simply not implicated when the confinement at issue stems from an alternative rehabilitative program that a defendant voluntarily enters after he admits his guilt. Accordingly, Petitioner's limited argument fails to demonstrate that the denial of a credit for drug court confinement is a violation of Virginia law, let alone demonstrate that such practice is a violation of the due process clause of the United States Constitution. See Estelle, 502 U.S. 62, 67-68 ("'Cases in this Court have long proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial . . . . But it has never been thought that such cases establish this Court as a rulemaking organ for the promulgation of state rules of criminal

---

[17] Included in Petitioner's state habeas file is an affidavit from the "Manager of the Court and Legal Services Section" for the VDOC indicating that calculating a sentence without credit for drug court time is, in the eyes of VDOC, "in accordance with applicable Virginia statutes and time computation practices." Hampton Cir. Ct. Case File, Case No. CL12-1905 at 99-101. Additionally, both VDOC records and the Hampton Circuit Court's "Final Order" dismissing Petitioner's state habeas petition indicate that it was also the position of the Hampton Circuit Court that Petitioner was not entitled to credit for drug court confinement. Id. at 103-04. 116.

procedure.'" (omission in original) (quoting <u>Spencer v. Texas</u>, 385 U.S. 554, 563-64 (1967))).

Moreover, even if this Court assumes that Petitioner is the only Virginia inmate whose sentence was calculated in such manner, for reasons similar to the equal protection analysis, this Court finds that Petitioner's undeveloped due process argument fails to demonstrate a constitutional violation. As noted above, the unique facts of this case involve the sentencing judge imposing a sentence substantially less than the five years and eight months called for by Petitioner's written plea agreements. The judge imposed such reduced sentence after being informed of the lengthy period of time that Petitioner spent in a diversion center as part of his drug court program. Although Petitioner asserts that he was unaware at his sentencing hearing that he would not receive credit for time spent in drug court confinement, he does not demonstrate that Virginia lacks constitutionally adequate procedures, i.e. "process," for challenging his sentencing calculation. Nor does Petitioner demonstrate that the state has such procedures, but that they were applied in his case in a manner that denied him a meaningful opportunity to challenge the calculation of his sentence. To the contrary, the record suggests that Petitioner first pursued such issue administratively, and thereafter filed a state habeas petition challenging the manner in which his

sentence was calculated.  Such state petition was denied on the merits by the Hampton Circuit Court, and Petitioner's appeal of such ruling was denied on procedural grounds.  Petitioner therefore fails to demonstrate that he was denied due process based on the manner in which his sentence was calculated.[18]

As set forth above, Petitioner fails to overcome the procedural default of his Fourteenth Amendment Due Process claim.  Alternatively, Petitioner fails to demonstrate that such claim is meritorious.

### 3. The Fifth Amendment

In addition to his reliance on the Fourteenth Amendment, Petitioner's first ground for relief asserts that his Fifth Amendment right against "double jeopardy" was violated by the denial of sentencing credits for the time he spent incarcerated

---

[18] Although a criminal defendant's failure to fully understand all aspects of a state criminal process or procedure does not always have constitutional implications, it would appear that prosecutors, defense counsel, the judges of the court, the public, and most importantly, criminal defendants, are best served by transparency from the outset. Pursuant to Virginia Code § 18.2-254.1(J): "Participation by an offender in a drug treatment court shall be voluntary and made pursuant only to a written agreement entered into by and between the offender and the Commonwealth with the concurrence of the court." Although this Court is not privy to the conversations between defense counsel and Petitioner, or matters discussed at all state court proceedings, it would appear preferable to all those involved in the process to clearly disclose in writing in a drug court "contract" or written plea agreement, that time spent in drug court confinement will not be credited against a subsequently imposed sentence.  If such written disclosure existed here, not only would it have made matters more predictable for Petitioner, but it may have drastically reduced the matters in dispute in both the state and federal habeas proceedings.

as part of the drug court program.   The Fifth Amendment states
"No person shall . . . be subject for the same offence to be
twice put in jeopardy of life or limb . . . ."   U.S. Const.
amend. V.   In the context of sentencing credits, a judge from
this Court described the double jeopardy implications in the
Durkin case that was subsequently appealed to the Fourth
Circuit:

> [T]he failure to give post-conviction credit to a
> convicted person who remains in confinement pending
> appeal effectively punishes that person twice for the
> same offense.   Punishment is exacted once by confining
> the person from conviction to final disposition of his
> appeal, and is exacted again when the convicted person
> begins service of his sentence.   The Fifth Amendment
> guarantee against double jeopardy, made applicable to
> the states by the Fourteenth Amendment, Benton v.
> Maryland, 395 U.S. 784 (1969), 'protects against
> multiple punishments for the same offense.'   North
> Carolina v. Pearce, 395 U.S. 711, 717 (1969).   In
> order to preclude the possibility, therefore, that a
> convicted person will suffer multiple punishment for
> the same offense in violation of the 'double jeopardy'
> clause, the state must, as does Virginia, . . . fully
> credit post-conviction confinement toward the sentence
> to be served by a criminal defendant because it is
> 'punishment already exacted,' Id. 395 U.S. at 718, 89
> S. Ct. 2072, 23 L.Ed.2d 656.   As Judge Butzner stated
> for the Fourth Circuit in Wilson v. State of North
> Carolina, 438 F.2d 284, 286 (4th Cir. 1971), a
> convicted criminal defendant is '. . . entitled to
> credit for the entire period he was detained after he
> was placed in jeopardy for the offense resulting in
> his conviction . . . .'

Durkin v. Davis, 390 F. Supp. 249, 254 (E.D. Va. 1975).   On
appeal, the Fourth Circuit made the following statement
regarding the double jeopardy analysis:

> [A] double jeopardy violation is premised on the conclusion that [p]retrial detention is nothing less than punishment. Under this premise, such punishment is considered multiple punishment since no credit is given on the subsequent sentence imposed for the single offense. The double jeopardy clause prohibits equally multiple punishments and multiple convictions for the same offense.

Durkin, 538 F.2d at 1041 (internal citations and quotation marks omitted). Therefore, although failure to give a detained defendant a sentencing credit for time spent in jail awaiting trial or awaiting an appeal can amount to an Fifth Amendment violation, for similar reasons to those discussed above within this Court's Fourteenth Amendment analysis, Petitioner fails to demonstrate that his Fifth Amendment rights were violated.

As noted by the Fourth Circuit in Durkin, pre-trial detention or detention pending an appeal are "nothing less than punishment" for the underlying criminal offense, and failure to award a credit for such time can therefore amount to double punishment in some circumstances. Id. In contrast, here, Petitioner was not incarcerated during his drug court program while he was "awaiting trial" or "awaiting an appeal"; rather, he was attempting to complete a diversionary non-punitive rehabilitative program that, if all rules and procedures were complied with, may have resulted in Petitioner serving zero days in confinement rather than five years and eight months in the state penitentiary. However, because Petitioner failed to

47

follow the rules of the drug court program, he did in fact spend time in confinement.  Such drug court confinement was not, however, designed to punish Petitioner _for his underlying crimes_, but was instead: (1) intended to punish Petitioner for the _post-offense failure_ to follow the rules and procedures of the drug court program; and (2) intended to encourage Petitioner to follow the program rules and successfully rehabilitate which would allow him the opportunity to avoid receiving an active sentence.  Therefore, rather than being required to serve a sentence that unconstitutionally punished Petitioner twice _for the same conduct_, Petitioner was confined during the drug court program for drug court violations (and his longest confinement in the diversion center was based on _his choice_ to participate in such program in lieu of drug court termination), and he was later punished separately, after discharge from the drug court program, _for his underlying crimes_ by being sentenced to four years imprisonment.

In addition to the instant fact pattern revealing that Petitioner was not punished twice _for the same conduct_, even if the Court assumes that Petitioner's drug court confinement was the equivalent of "punishment" for his underlying offenses, Petitioner fails to demonstrate that he was in fact "punished twice."  Although Petitioner received no official "credit" for drug court confinement, he was subsequently sentenced to _only_

48

four years incarceration, rather than the five years and eight months called for by his written plea agreements and to which he explicitly agreed. Because his four year term of imprisonment plus his drug court confinement aggregates to far less than five years and eight months, the time Petitioner agreed to serve before he even started the drug court program, Petitioner fails to demonstrate that he was "punished twice" in violation of the Fifth Amendment to the United States Constitution.

For the reasons set forth above, Petitioner fails to overcome the procedural default of his Fifth Amendment claim. Alternatively, he fails to demonstrate that such claim is meritorious.

### 4. The Sixth Amendment

In addition to considering constitutional violations under the Fifth and Fourteenth Amendments, the R&R addressed the impact on a criminal defendant's Sixth Amendment right to a jury trial that can result based on the improper denial of sentencing credits for time spent in confinement "awaiting trial." The R&R recognizes that "'[t]he prospect of lingering in jail until trial and earning no credit toward one's sentence, if found guilty, may [improperly] induce the defendant to give a quick guilty plea so that he can start serving off his sentence.'" R&R at 15, ECF No. 34 (quoting Durkin, 390 F. Supp. at 253). However, based on this Court's analysis factually distinguishing

drug court confinement from confinement "awaiting trial," Petitioner's Sixth Amendment right to a jury trial is not implicated based on the fact pattern before this Court.

As discussed herein, every day of confinement for which Petitioner seeks credit occurred after Petitioner admitted his guilt and entered into two plea agreements, one governing his probation violations, and one governing his subsequent shoplifting charge. Petitioner's plea bargain with state prosecutors was predicated on Petitioner's voluntary efforts to enter and complete the drug court program in lieu of being sentenced to a term of imprisonment in the state penitentiary. Petitioner's plea agreements clearly state that, upon failure to complete such program, Petitioner would receive four years imprisonment on his probation violations, and one year and eight months imprisonment on his shoplifting conviction. The facts before this Court in no way suggest that any of Petitioner's actions were motivated by his fear of "lingering in jail until trial and earning no credit toward [his] sentence." Id. To the contrary, had Petitioner asserted his innocence and continued to trial, he would have received a credit for every day he spent in jail awaiting trial pursuant to Virginia statute. Petitioner, however, was not confined "awaiting trial" for any of the days for which he now seeks credit. Rather, he was confined as part

of a diversionary disposition program that was intended to rehabilitate him and avoid a lengthy active prison term.

Accordingly, Petitioner fails to overcome the procedural default bar based on the guarantees provided him by the Sixth Amendment.  Alternatively, even if this Court were permitted to squarely address the merits of a potential Sixth Amendment claim, the Court would conclude that such a claim fails on the merits for the same reasons discussed herein.

### 5. The Eighth Amendment

Petitioner's amended § 2254 petition also asserts that the denial of sentence credits for time he spent in drug court confinement violates his Eighth Amendment right protecting against "cruel and unusual punishments."  U.S. Const. amend. VIII.  The R&R before this Court does not reference Petitioner's Eighth Amendment argument, and Petitioner does not object to either the absence of such analysis or the absence of a conclusion that there was an Eighth Amendment violation. Accordingly, it does not appear that this Court is required to perform a de novo review of such issue.  However, because it does not appear that the R&R includes any analysis for this Court to adopt, out of an abundance of caution, this Court has reviewed such issue de novo.

Petitioner's Eighth Amendment claim is predicated on the contention that, when his drug court confinement is considered,

51

he is being required to serve more than the statutory maximum sentence for his crimes.   As discussed at length herein, even considering Petitioner's drug court confinement, he is currently serving a term of incarceration of less than five years total, which is far less than the "statutory maximum."   Notably, prior to his sentencing in 2011, Petitioner had nearly twenty-two years of suspended time that could be imposed on his probation violations and up to five years of additional time that could be imposed on his more recent shoplifting conviction.   Furthermore, Petitioner's current sentence, even when aggregated with his drug court confinement, is approximately <u>one year less</u> than the active sentence that Petitioner agreed to serve in his written plea agreements.   Far from being sentenced to a term that offends the United States Constitution, Petitioner received leniency at sentencing.

Accordingly, Petitioner fails to excuse his failure to timely appeal the Hampton Circuit Court's habeas decision, which constitutes procedural default, by demonstrating prejudice stemming from an Eighth Amendment violation.   Alternatively, to the extent this Court is permitted to perform a merits based analysis, Petitioner's Eighth Amendment claim plainly fails on the merits.

### 6. Summary of Respondent's First Objection

As explained in detail above, after conducting a _de novo_ review of the issues covered by Respondent's first objection, this Court sustains such objection and concludes that Petitioner fails to demonstrate prejudice to overcome his procedural default.  The Virginia Supreme Court dismissed Petitioner's state habeas motion based on a separate and independent state law procedural rule, and the rules of comity dictate that such ruling be left undisturbed except in the uncommon circumstance where a state prisoner demonstrates both "cause" and "prejudice," or "actual innocence" to excuse his procedural default.  See _Hedrick v. True_, 443 F.3d 342, 370 (4th Cir. 2006) (indicating that when "a petitioner has procedurally defaulted on his claim[s] . . . comity instructs that [the federal courts] decline to consider the claim out of respect for the state procedural rule that the petitioner violated").  Here, regardless of the precise contours of the "prejudice" inquiry, for all the reasons discussed above, Petitioner fails to demonstrate prejudice sufficient to overcome his procedural default.

Although it is arguably circular to conduct what is akin to a merits based analysis in order to determine if Petitioner is able to overcome his procedural default, in the context of a § 2254 habeas motion alleging constitutional violations where a

Petitioner has demonstrated "cause" for his procedural default, such procedure appears to be an approved method of analysis. See Wolfe v. Clarke, 691 F.3d 410, 420 (4th Cir. 2012) (indicating that, at least with respect to Brady violations, a district court necessarily finds sufficient "prejudice for the Brady claim's default when it determine[s] that claim to be meritorious"); Giarratano v. Procunier, 891 F.2d 483, 489 (4th Cir. 1989) (noting that, because the petitioner failed to demonstrate actual infringement of his Fifth Amendment rights, he failed to show prejudice); Henderson v. Majors, 825 F.2d 406, 1987 WL 38125, at *2 (4th Cir. 1987) (unpublished table opinion) (finding no prejudice when the facts failed to demonstrate an actual Fifth Amendment violation).[19]

---

[19] Several district courts from outside the Fourth Circuit have expressly noted the overlap between prejudice analyses and merits-based analyses. For example, in Tyler v. McCaughtry, 293 F. Supp. 2d 920 (E.D. Wis. 2003), the district court provided a detailed discussion of the uncertain state of the law regarding the "methodology" for analyzing prejudice, noting that the Sixth Circuit "assume[s] that a petitioner's claim has merit and then determine[s] whether the claimed error was prejudicial," whereas the Seventh Circuit has at times appeared to apply the Sixth Circuit approach, and at times appeared to indicate that a court "must examine the merits of a defaulted claim" to determine prejudice. Id. at 925-26 (citing cases). The Tyler opinion also noted that "[i]n Strickler v. Greene, 527 U.S. 263 (1999), in determining whether a petitioner had shown prejudice in connection with the procedural default of a Brady claim, the Supreme Court did not assume that the claim was meritorious but rather analyzed its merits." Id. at 926. Although the Tyler district court questioned the analytical need for a "prejudice" prong if a petitioner demonstrates "cause," it acknowledged that a "cause" determination was required by controlling law and ultimately ordered additional merits based briefing so that the court could conduct its prejudice analysis. Id. at 929-30; see U.S. ex rel. McCalla v.

However, if this Court should either assume prejudice for the purpose of the procedural inquiry based on the nature of the rights at stake, or should have otherwise concluded that Petitioner satisfied his procedural burden, Petitioner's constitutional claims still fail on the merits. Petitioner fails to demonstrate a violation of his constitutional rights based on the manner in which the VDOC and/or Hampton Circuit Court calculated his sentence, even assuming that the merits inquiry must be conducted de novo, giving no deference to the Hampton Circuit Court's merits-based state habeas decision. Notably, even if the denial of credit for time spent in drug court confinement could, on other facts, result in a constitutional violation, here, no constitutional violation occurred because Petitioner's sentence, which was imposed after he failed to complete the drug court program by a judge familiar with the relevant facts, required him to serve a total aggregate

---

Gramley, No. 96-C-0418, 1996 WL 699629, at *5 (N.D. Ill. Nov. 27, 1996) (noting that the success of petitioner's Fourth, Sixth, Eighth, and Fourteenth Amendment claims depended on a showing of prejudice, and "[a]ctual prejudice depends on the merits of his constitutional claims; unless the claims are meritorious, [the petitioner] will suffer no prejudice from a finding of procedural default"); Justin F. Marceau, Is Guilt Dispositive? Federal Habeas After Martinez, 55 Wm. & Mary L. Rev. 2071, 2115 (2014) ("Leading habeas scholars have observed that the 'rare exceptions to this [procedural default] rule precluding postconviction relief for constitutional violation are . . . results-oriented inquiries.'") (citations omitted).

sentence of less time than he agreed to serve in his written plea agreements. Petitioner's first ground for relief is therefore **DISMISSED and DENIED**.

### B. Objection to the De Novo Standard of Review

Respondent's second objection challenges the *de novo* standard of review recommended in the R&R which, citing to *Thomas v. Horn*, 570 F.3d 105 (3d Cir. 2009), concluded that no deference is owed to the Hampton Circuit Court's merits-based habeas analysis because such analysis was in effect "replaced" by the Virginia Supreme Court's subsequent procedural ruling. In light of this Court's conclusion that Petitioner fails to overcome the procedural default bar, which precludes a true merits based analysis, Respondent's second objection is deemed moot, and this Court therefore finds it unnecessary to squarely resolve such objection.[20]

---

[20] Although this Court's analysis in preceding sections alternatively addresses the merits of Petitioner's claims, and does so *de novo* giving no deference to the state trial court's merits-based habeas ruling, the Court does so assuming without deciding that *de novo* is the proper standard of review. As detailed above, even under a *de novo* review standard, which is the most favorable standard to Petitioner, his first ground for relief seeking sentencing credits fails on the merits. Similarly, Petitioner's second through fourth grounds for relief fail on the merits even giving no deference to the prior state habeas court's merits-based analysis for the reasons stated in the R&R, which were not objected to by Petitioner, and were adopted above, as such analysis contains no clear error. Because all pending grounds for relief can be, and have been, conclusively resolved without the need to squarely address Respondent's second objection, this Court declines to do so.

## C. Objection to Finding That Petitioner was "Awaiting Trial" during the Drug Court Program

Respondent's third objection appears to challenge the conclusion in the R&R that Petitioner was entitled to a sentence credit for time he spent in jail during his drug court program because the sentencing court ordered Petitioner to receive a credit for all time spent in confinement while "awaiting trial." This Court has fully addressed such matter within its analysis resolving Respondent's first objection, and in light of such analysis and ruling, no further ruling or analysis is necessary.

## D. Objection to Waiver

Respondent's fourth objection challenges the finding in the R&R that Respondent "waived" the opportunity to address the merits of Petitioner's claims based on Respondent's decision to focus responsive filings only on Petitioner's procedural default. This Court declines to squarely address such objection as it is rendered moot in light of both the de novo review this Court performs as to any portion of the R&R to which specific objections are made, United States v. George, 971 F.2d 1113, 1117-18 (4th Cir. 1992), and this Court's finding herein that Petitioner fails to overcome his procedural default.

That said, it appears to the Court that the Magistrate Judge entered a standard order instructing Respondent to file a "Rule 5 Answer" to the § 2254 petition, and Rule 5 of the Rules

57

Governing § 2254 Proceedings clearly states that an answer must both "address the allegations in the petition" and identify any procedural infirmities in the petition.  R. Governing § 2254 Proceedings in U.S. Dist. Cts. 11(a) (emphasis added). Respondent's contention that that Magistrate Judge made a procedural error by ruling on Petitioner's habeas motion rather than ordering Respondent to file a second Rule 5 Answer addressing the merits of Petitioner's claims appears to overlook the express requirement for the filing of a complete Rule 5 Answer.

## V. PETITIONER'S OBJECTION TO THE R&R

Petitioner's lone objection to the R&R challenges the Magistrate Judge's finding that Petitioner should not receive credit against his sentence for time spent in the Stafford Diversion Center Program, which was part of Petitioner's drug court program.  Pet'r's Obj. to R&R 3, ECF No. 37.  Petitioner argues that "time spent at the Diversion Center should be credited toward this sentence because time spent in this program is considered incarceration."  Id. at 2 (citing Charles, 270 Va. at 20).

Having considered such issue de novo, for the reasons set forth above as part of this Court's analysis of Petitioner's habeas claim that he was unconstitutionally denied sentencing credits, this Court rejects Petitioner's assertion that he must

58

be awarded "credit" for the days he spent in the diversion center.   Notably, even assuming that the days Petitioner spent at the Stafford Diversion Center were the equivalent of "incarceration," similar to that in Charles, Petitioner both: (1) fails to overcome his procedural default; and (2) fails to demonstrate that he has a meritorious claim that his constitutional rights were violated by the denial of credit for time spent in drug court confinement (to include both jail and jail equivalents).   Because Petitioner cannot overcome his procedural default or demonstrate a meritorious constitutional argument, his claim for a sentencing credit is denied in total, and this Court therefore need not perform additional legal analysis addressing the difference under Virginia law, if any, between time spent confined in "jail" and time spent confined in the "Stafford Diversion Center."

## VI. CONCLUSION

Having reviewed for "clear error" all unobjected-to portions of the detailed R&R, as set forth above, this Court adopts the unobjected to facts and analysis set forth in the R&R, as modified herein.   Having considered de novo all objected-to portions of the R&R, for the reasons set forth in detail above, this Court finds that Petitioner fails to satisfy the legal standard necessary to overcome his procedural default. The Court therefore **GRANTS** Respondent's motion to dismiss, and

**DISMISSES** Petitioner's amended § 2254 petition in its entirety. Alternatively, to the extent this Court is permitted to squarely address the merits of Petitioner's § 2254 claims, for the reasons discussed above, Petitioner's claims are alternatively **DENIED** on the merits.

Finding that Petitioner fails to make the requisite legal showing supporting the issuance of a certificate of appealability, this Court **declines to issue** such a certificate. See Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003); R. Governing § 2254 Proceedings in U.S. Dist. Cts. 11(a); Fed. R. App. P. 22(b); 28 U.S.C. § 2253(c). Petitioner is **ADVISED** that, because a certificate of appealability is denied by this Court, he may seek a certificate from the United States Court of Appeals for the Fourth Circuit. R. Gov. § 2254 Proceedings for U.S. Dist. Cts. 11(a). If Petitioner intends to seek a certificate of appealability from the Court of Appeals, he should forward a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510, within thirty (30) days from the date of entry of this judgment.

The Clerk is **DIRECTED** to provide a copy of this Opinion and Final Order to Respondent, and to **mail a copy** to the Petitioner.

It is so **ORDERED**.

/s/ _____

_____

Mark S. Davis
United States District Judge

Norfolk, Virginia
July 31 , 2014